## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ROBERT L. ORD,                  )

                               )

           Plaintiff,        )

                               )

      v.                   )     Civil Action No.08-00704 (JDB)

                               )

DISTRICT OF COLUMBIA,     )

                               )

          Defendant.     )

_____)

### DEFENDANT'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant hereby moves this Honorable Court to dismiss the Complaint based on plaintiff's failure to state a claim upon which relief can be granted. Plaintiff's claims are predominately local, even assuming they are ripe or that he has standing. His sole federal claim is too insubstantial for the Court to exercise jurisdiction here.

The grounds and the reasons are set forth more fully in the accompanying Memorandum of Points and Authorities and proposed Order. The accompanying Memorandum also serves as defendant's Opposition to plaintiff's Motion for Preliminary Injunction, pursuant to LCvR 65.1(c).

DATE: May 7, 2008        Respectfully submitted,

                              PETER J. NICKLES
                              Interim Attorney General for the District of Columbia

                              GEORGE C. VALENTINE
                              Deputy Attorney General, Civil Litigation Division

                                /s/ Ellen A. Efros
                              ELLEN A. EFROS, D.C. Bar No. 250746
                              Chief, Equity Section I
                              441 Fourth Street, N.W., 6th Floor South
                              Washington, D.C. 20001

Telephone: (202) 442-9886
Facsimile: (202) 727-0431

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ROBERT L. ORD,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No.08-00704 (JDB)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
                    Defendant.          )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS AND
IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant the District of Columbia ("the District" or "the government"), pursuant to Fed.
R. Civ. P. 12(b)(1) and 12(b)(6), moves this Court to dismiss the Complaint. This memorandum
of points and authorities is provided in support of the defendant's dispositive motion in
accordance with LCvR 7(a), and in opposition to plaintiff's motion for preliminary injunction,
pursuant to LCvR 65.1(c).

Plaintiff's claims are unripe, and he lacks standing to assert them. Even if he could bring
them, however, they are meritless.

The Court should deny plaintiff's request for emergency injunctive relief, because
plaintiff has shown no imminent, irreparable injury, and his predominantly local claims are
premature. Plaintiff does not provide any competent evidence of the "imminent, irreparable
harm" necessary for the grant of emergency injunctive relief.

Plaintiff has utterly failed to meet his high burden for the extraordinary remedy
demanded here.

The Court should decline plaintiff's invitation to inject itself into this quintessentially local matter. What plaintiff claims is a breach of his rights is nothing more than a premature challenge to a matter of preeminent local concern—the enforcement of the District's firearms laws.

## I. Factual and Procedural Background

According to the Complaint, on April 17, 2008, a warrant for plaintiff's arrest was issued by the Superior Court of the District of Columbia.[1] Complaint ¶ 19. Plaintiff first learned of the existence of the warrant on April 21, 2008. *See* "Motion to Dismiss Information and Quash Arrest Warrant," *District of Columbia v. Robert L. Ord*, 2008 CNC 236 (Super. Ct. of D.C. Apr. 22, 2008).

After discussions with plaintiff's counsel, prosecutors declared a *nolle prosequi* on April 24, 2008. Complaint ¶ 29. Plaintiff was never arrested or taken into custody.

Plaintiff filed the instant suit on or about April 24, 2008, alleging deprivation of a "liberty interest" (Count I), malicious prosecution (Count II), and intentional infliction of emotional distress (Count III). Complaint ¶¶ 30–46. Plaintiff also requests declaratory and injunctive relief, seeking to be declared exempt from certain provisions of District of Columbia firearms-registration laws. *Id*. ¶¶ 48–50. Plaintiff also apparently seeks compensatory and punitive damages. *Id*., p. 8.

## II. Argument

The Court should resist plaintiff's attempts to clothe this local matter in federal terms. Plaintiff was never arrested or taken into custody, and has not been deprived of any property or

---

[1]     The District reserves and does not waive any future defensive motions or pleadings and does not admit the factual allegations of the Complaint or plaintiff's motions except for purposes of this Motion.

"liberty interest" sufficient to invoke the jurisdiction of this Court.  Plaintiff essentially seeks an impermissible advisory opinion on his presumptive legal defenses, in a prosecution that may never happen.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999). All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*. (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)); *see also Price v. Crestar Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).

"While a complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' for 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise the right of relief above a speculative level." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964–65 (2007) (internal citations omitted).

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir. 2002).

Plaintiff's claims, while couched in federal and constitutional terms, essentially implicate only local law and, as such, are too insubstantial to invoke federal-question jurisdiction. *See, e.g., Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 362 (D.C. Cir. 2007) ("A federal

court has jurisdiction over substantial federal claims, together with local law claims that are part of a common nucleus of operative fact. But a federal court lacks jurisdiction altogether if the federal claims are insubstantial."); *Doe v. District of Columbia*, 445 F.3d 460, 466 & n.13 (D.C. Cir. 2006) (complaint should be dismissed for failure to state a claim "[b]ecause there are no allegations of federal constitutional violations independent of the purported violations of District of Columbia law (or at any rate no such allegations for which plaintiffs have standing) . . . .") (discussing *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 292 (D.C. Cir. 2000)). *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

*1. Plaintiff's Claims are Unripe and He Lacks Standing.*

Plaintiff's claims are dependent on "contingent future events," hence they are unripe. *Flynt v. Rumsfeld*, 355 F.3d 697, 702 (D.C. Cir. 2004) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).

"Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (citations and internal quotation marks omitted). *See also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (*quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). A federal court's jurisdiction can only be invoked when a

plaintiff has suffered some threatened or actual injury resulting from a defendant's putatively illegal action. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Plaintiff has not shown any "certainly impending" injury.

In the classic formulation, for a plaintiff to have standing, he must show (1) concrete, personal injury, (2) which must be fairly traceable to the defendants' conduct, and (3) such injury must be "likely" to be redressed if the relief sought is granted. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Kurtz v. Baker*, 829 F.2d 1133, 1138 (D.C. Cir. 1987), *cert. denied*, 486 U.S. 1059 (1988)). If plaintiff cannot meet all three prongs of this test, the Court must dismiss the suit for lack of standing.

Plaintiff lacks standing because his allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001).

To have standing, a plaintiff must allege a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972); *Field v. Brown*, 610 F.2d 981, 990 (D.C. Cir. 1980). *See also Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) ("The Constitution requires a concrete and particularized injury.").[2]

To establish standing here, plaintiff must demonstrate by specific facts that he faces a "credible and immediate" threat of enforcement. *See, e.g., Babbitt*, 442 U.S. at 298; *Seegars*, 396 F.3d at 1251; *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (party must

---

[2]    Separation of powers principles underlie the concept of standing, and reflect that courts should not prematurely interfere "with legislative and executive functions which have not yet proceeded so far as to affect individual interests adversely. Accordingly, the courts should never 'anticipate a question of constitutional law in advance of the necessity of deciding it.'" *Field*, 610 F.2d at 990 (*quoting Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 72 (1961).

demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement). *See also Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007), *cert. granted sub. nom., Heller v. District of Columbia*, ___ U.S. ___ (Nov. 20, 2007).[3]

In other words, plaintiff must show "a threat of prosecution reaching the level of imminence required by *Navegar*." *Seegars*, 396 F.3d at 1255. Analyzing that alleged threat of prosecution "is a factual and case-specific one" requiring courts to look at a number of factors. *Navegar*, 103 F.3d at 999 (*citing, inter alia, Lion Mfg. v. Kennedy*, 330 F.2d 833, 839 n.10 (D.C. Cir. 1964) (federal court "intervention must, at the very least, rest upon a showing of an immediate and tangible danger to the person assertedly apprehensive of prosecution.")).[4]

Plaintiff cannot meet this burden. *See Navegar*, 103 F.3d at 999 ("plaintiffs allege no . . . characteristics indicating an especially high probability of enforcement against them."). In *Navegar*, for example, the court found that a threat of enforcement of a federal law was not

---

[3]        The Circuit in *Parker* explained that certain plaintiffs had standing to challenge a criminal statute because those plaintiffs had sufficiently alleged "an actual and well-founded fear that the law will be enforced against them . . . ." *Parker*, 478 F.3d at 375.

[4]        *See also Lion Mfg.*, 330 F.2d at 839–40:

Just as the complaint alleges no specific threat of prosecution, so it does not allege facts which raise such threat.

* * *

To assert that [legislation] is unconstitutional on its face is a formidable contention under any circumstances; the least that can be required of one who makes it is that he relate himself clearly to the impingement of the statute. This, in order to create a meaningful lawsuit within our adversary tradition, calls for more than a mere prayer for an adjudication of the statute's invalidity now in order that one may be spared any prospect, however remote, of being obliged to defend oneself later.

*Id*. (footnote omitted).

sufficiently "credible" even when some plaintiff firearm-manufacturers had personally been visited by ATF agents and notified of the disputed law's enactment. 103 F.3d at 1000.

Similarly, in *Seegars*, the Circuit found that plaintiffs, to establish standing to challenge a District firearms law imposing criminal penalties, "were required to show that the District had singled them out for prosecution . . . ." *Parker*, 478 F.3d at 374 (discussing *Seegars*). Because the *Seegars* plaintiffs "could show nothing more than a general threat of prosecution by the District," they lacked standing. *Id.*

The identical situation obtains here. Plaintiff has failed to show any "credible and immediate" threat of enforcement by the District. Plaintiff has not shown that he "ha[s] been singled out or uniquely targeted by the D.C. government for prosecution[,]" nor has he pointed to any "actual and specific" threats of enforcement against him personally which are sufficient to demonstrate standing. *Parker*, 478 F.3d at 375.

The only evidence plaintiff can point to regarding a purported threat is a memorandum apparently written by the D.C. Metropolitan Police Department. *See* Plaintiff's Exhibit B. But that memo is addressed to MPD Reserve Corps members, "a corps of unpaid volunteers who fulfill police duties and responsibilities as determined by the Chief of the Metropolitan Police Department." D.C. Official Code § 5-129.51 (2007 Supp.).

Thus, that memo, by its own terms, applies *only* to members of the Reserve Corps who "also serve as Special Conservators of the Peace" ("SCOP") in Virginia, and reminds them that Reserve Corps members, regardless of their status in Virginia, are still governed by MPD's rules and regulations regarding firearms. While it is unclear how plaintiff acquired the memo, there are no allegations that plaintiff himself is a Reserve Corps member, hence the memo does not apply to him.

To the extent the memo may be read to encompass *all* SCOPs who are not "qualified law enforcement officers" under the federal Law Enforcement Officers' Safety Act of 2004 ("LEOSA"), 18 U.S.C. § 926B *et seq.*, the memo is clearly not a "credible and immediate threat" of prosecution, as it speaks only generally of "relevant criminal penalties."

Plaintiff has not alleged any intent or desire to bring concealed weapons into the District, nor can he show a *current* threat of enforcement of District law against *him*, hence he lacks standing. "'[S]ome day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of . . . 'actual or imminent injury . . . .'" *ANSWER Coalition v. Kempthorne*, 493 F.Supp.2d 34, 45 (D.D.C. 2007) (quoting *Lujan*, 504 U.S. at 564) (emphasis in original)). *See also, e.g., Seegars*, 396 F.3d at 1253 (this Circuit's preenforcement standing cases "appea[r] to demand more than a credible statement by the plaintiff of intent to commit violative acts and a conventional background expectation that the government will enforce the law.") (*citing Navegar*). "Rather, the District appears to be expressing a sentiment ubiquitous among stable governments the world over, to wit, scofflaws will be punished." *Parker*, 478 F.3d at 375.

Plaintiff alleges only a fear of future arrest and prosecution. Such conjecture is insufficient to support standing. *See Texas*, 523 U.S. at 300 ("a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

Under the ripeness doctrine, a court must examine the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nevada v. Department of Energy*, 457 F.3d 78, 84 (D.C. Cir. 2006) (quoting *Eagle-Picher Indus., Inc. v.*

*EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985)). The Supreme Court has elaborated, concluding that in ripeness challenges a court must consider "(1) whether delayed review would cause hardship to the plaintiff[;] (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Nevada*, 457 F.3d at 84 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Here, delayed review would cause no hardship to plaintiff, because he is not currently facing arrest or prosecution. Moreover, as explained elsewhere, premature judicial intervention by this Court would inappropriately interfere with further proceedings in this matter of substantial local importance. Similarly, the "further factual development" contemplated by case will occur in the local proceedings, *if plaintiff is arrested and prosecuted*. Thus, plaintiff's claims are not yet ripe. *See Texas*, 523 U.S. at 301 (postponing adjudication gives state courts the opportunity to resolve any constitutional issues that may be present).

### 2. *Plaintiff Has Not Been Deprived of Any Liberty Interest.*

Plaintiff was never arrested or taken into custody. The mere issuance of an arrest warrant does not invoke due process or other constitutional protections, because no liberty interest is yet at stake. *Willis-Bey v. District of Columbia Dept. of Corrections*, 2007 WL 1847853, *3 (D.D.C. 2007). "[T]he execution of the warrant and custody under that warrant [are] the operative event[s] triggering any loss of liberty." *Id*. (quoting *Moody v. Daggett*, 429 U.S. 78, 87 (1976)).

Plaintiff complains that the arrest warrant was issued without probable cause, but such a claim is legally irrelevant if he was never arrested or detained pursuant to that warrant.

"[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest." *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (citing *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Here, of course, plaintiff was never arrested or prosecuted, and hence was never deprived of any constitutional interest; plaintiff cannot challenge the mere decision to issue an arrest warrant.[5] *Id.* (the accused is not "entitled to judicial oversight or review of the decision to prosecute.").[6] *Cf. Pitt*, 491 F.3d at 511 (malicious prosecution is actionable under § 1983 "to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without probable cause") (plaintiff was detained ten days in a halfway house after arrest). *But see Baker v. McCollan*, 443 U.S. 137, 145 (1979) (arrest and incarceration for eight days on warrant intended for plaintiff's brother failed to give rise to a cognizable constitutional claim).

Plaintiff has not alleged any facts that show that the District has disturbed any property or liberty interest held by him, merely asserting in vague and conclusory terms that the District "deprived [him] of his rights, privileges, and immunities secured by the Constitution and applicable law." Complaint ¶ 34.[7]

_____

[5]     "[T]he term arrest may be applied to any case where a person is taken into custody or restrained of his full liberty, or where the detention of a person in custody is continued for even a short period of time." *Maniaci v. Georgetown Univ.*, 510 F.Supp.2d 50, 69 (D.D.C. 2007) (quoting *Coleman v. United States*, 295 F.2d 555, 563–64 (D.C. Cir. 1961)).

[6]     *See also, e.g., Community for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986) ("The power to decide when to investigate, and when to prosecute, likes at the core of the Executive's duty to see to the faithful execution of the laws; when reviewing the exercise of that power, the judicial authority is, therefore, at its most limited.").

[7]     *See Albright*, 510 U.S. at 289–91 (Kennedy, J., concurring):

None of these injuries, however, is alleged to have followed from the issuance of the formal instrument of prosecution, as distinct from the ensuing assertion of

"This allegation is insufficient to withstand a challenge because it does not put the defendant on notice as to what plaintiff's claim is based on, nor does it demonstrate a legally cognizable claim." *Joyce v. United States*, 795 F.Supp. 1, 6 (D.D.C. 1992) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

### 3. The Court Should Abstain.

Notwithstanding the above arguments, as the Court indicated during the teleconference on April 28, 2008, if plaintiff is ever arrested and prosecuted as he fears, he could bring all his claims here as defenses in the local litigation, or directly in local court, hence this case is appropriate for abstention.

Abstention is a "threshold question" that should be determined before addressing jurisdiction. *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 423 n.1 (D.C. Cir. 2006) (citing *Tenet v. Doe*, 544 U.S. 1, n.4 (2005)). Here, the Court, even if it determines that it has subject-matter jurisdiction over plaintiff's claims, should abstain from exercising it.

There are a three broad categories of cases where abstention may be appropriate: (1) where the exercise of federal jurisdiction would interfere with pending state criminal or civil proceedings, *see Younger v. Harris*, 401 U.S. 37, 43–49 (1971); (2) where a constitutional

_____

custody. Thus, petitioner has not shown a substantial deprivation of liberty from the mere initiation of prosecution.
* * *
[Such harms] usually occur only after an arrest or other Fourth Amendment seizure . . . . There is no restraint on movement until a seizure occurs or bond terms are imposed. Damage to reputation and all of its attendant harms also tend to show up after arrest. The defendant's mental anguish (whether premised on reputational harm, burden of defending, incarceration, or some other consequence of prosecution) customarily will not arise before an arrest . . . .

question might be avoided through the resolution of an ambiguous state law by state courts, *see Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 498–501 (1941); or (3) where federal adjudication would interfere with state regulation or policymaking of "substantial" interest to the public, *see Burford v. Sun Oil Co.*, 319 U.S. 315, 317–34 (1943). *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17 (1996) (discussing abstention doctrines); *Majhor v. Kempthorne*, 518 F.Supp.2d 221, 248 (D.D.C. 2007) (same).

The District avers that abstention is appropriate here for at least the last two listed reasons.[8]

Except in "extraordinary circumstances," a federal district court should not enjoin pending state proceedings that are judicial in nature and implicate important local interests. *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C. Cir. 2004) (determining that abstention

---

[8]      While a stay—rather than outright dismissal—may be appropriate when damages are not available in the parallel state proceeding, *see JMM*, 378 F.3d at 1120 (citing *Deakins v. Monaghan*, 484 U.S. 193, 202–203 (1988)), plaintiff's damages claims here are so insubstantial as to be dismissible outright. *See Ford v. Tait*, 163 F.Supp.2d 57, 66–67 (D.D.C. 2001):

> [T]his plaintiff premises jurisdiction on federal-question jurisdiction, pursuant to 28 U.S.C. § 1331, and alleges that the defendants have deprived him of rights, privileges, and immunities guaranteed to him by the United States Constitution. See Compl. at 2. This plaintiff seeks primarily equitable relief. The court thus concludes that the *Quackenbush* caveat instructing district courts not to dismiss cases revolving around legal damages does not apply in this case.

> Accordingly, the court dismisses the action on *Younger* equitable-restraint grounds.

Identically here, because plaintiff seeks primarily declaratory and injunctive relief, his claims may be dismissed under *Younger*. *See also Majhor*, 518 F.Supp.2d at 251–253 (even if plaintiff could not be awarded damages in state criminal proceeding, federal court abstention may still be appropriate under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), based on a number of factors, including "the presence in the suit of extensive rights governed by state law," *i.e.*, if the suit "is a non-federal cause of action that would normally be raised in the [state courts].").

under *Younger* applies to the District of Columbia). While there are no pending local proceedings here, an analysis of *JMM* may be instructive.

In *JMM*, the operator of an adult video store brought suit challenging the constitutionality of District zoning regulations, and sought to enjoin the ongoing administrative zoning enforcement action. The district court dismissed all of plaintiff's claims for injunctive and declaratory relief, and the Circuit affirmed:

> The ongoing District of Columbia proceedings are judicial in nature and implicate important District interests; those proceedings afford [plaintiff] an adequate opportunity to litigate its federal claims; and there are no extraordinary circumstances warranting equitable relief. Accordingly, the criteria for application of the *Younger* doctrine have been satisfied, and the district court's dismissal of [plaintiff]'s complaint was appropriate.

*Id*. at 1128; *see also Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996) (same).

Similarly here, to the extent any local criminal proceedings are ever initiated, they would be judicial in nature and implicate important District interests; the proceedings would afford plaintiff an adequate opportunity to litigate his constitutional claims, and—despite plaintiff's conclusory assertions otherwise—currently there are no extraordinary circumstances warranting emergency equitable relief.[9]

Although plaintiff does not explicitly allege any imminent denial of rights under the Second Amendment, abstention is appropriate even where a plaintiff "levels a First Amendment challenge against a regulation and contends that its existence has a chilling effect on his free speech." *JMM*, 378 F.3d at 1122 n.11 (citing *Younger*, 401 U.S. at 54).

---

[9]    "Extraordinary circumstances" may include showings of "bad faith" or "harassment" by state officials, or where the local law to be applied is "flagrantly and patently violative of express constitutional prohibitions." *JMM*, 378 F.3d at 1122 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 441 (1977)). Mere allegations of bad faith, unsupported by the record, are insufficient to warrant federal intervention in the local proceeding. *See, e.g., Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975); *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).

In light of *JMM*, on abstention grounds alone, the Court should dismiss the Complaint. *See also American Tower v. Williams*, 146 F. Supp. 2d 27, 31 (D.D.C. 2001) ("Such a question is not one of constitutional import; it is a question of state law and its resolution is best left to the local courts."), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002).[10]

### 4. Plaintiff Cannot Prove Malicious Prosecution.

To succeed on a malicious-prosecution claim in the District of Columbia, a plaintiff must plead and prove: 1) that the underlying suit terminated in his or her favor, 2) "malice" on the part of the opposing party, 3) a lack of probable cause for the underlying suit, and 4) "special injury." *Lucas v. District of Columbia*, 505 F.Supp.2d 122, 127 (D.D.C. 2007) (quoting *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C. 2002)).[11]

Plaintiff cannot meet any of these four elements, notwithstanding that there was never an underlying "suit."

Malice can be demonstrated by showing "the existence of a willful, wanton, reckless or oppressive disregard for the rights of the plaintiff." *Jackson v. District of Columbia*, ___ F.Supp.2d ___, 2008 WL 902148, *8 (D.D.C. Mar. 31, 2008) (quoting *Tyler v. Central Charge Serv., Inc.*, 444 A.2d 965, 969 (D.C. 1982)).

---

[10]    The court in *American Tower* dismissed plaintiff's federal claims "with prejudice" and dismissed plaintiff's local claims "without prejudice to their being refiled in a more appropriate forum . . . ." *American Tower*, 146 F. Supp. 2d at 36.

[11]    An alternate formulation states that, to establish a claim for malicious prosecution, a plaintiff must show: "(1) the initiation or procurement of criminal proceedings; (2) without probable cause; (3) primarily for a purpose other than bringing an offender to justice; and (4) termination of the proceedings in favor of the accused." *Joyce v. United States*, 795 F.Supp. 1, __ (D.D.C. 1992) (quoting *Davis v. Giles*, 769 F.2d 813, 814–15 (D.C. Cir. 1985)).

The District avers that plaintiff cannot make such a showing. In *Jackson*, the plaintiff claimed malicious prosecution, alleging that the police officer sought an arrest warrant without an investigation, in "reckless disregard for plaintiff's right to be free from unreasonable seizures." *Jackson*, *supra*. The court rejected the claim, finding that the plaintiff there was not immediately arrested, the officer instead sought a warrant for his arrest, discussed the warrant application with two different attorneys at the prosecutor's office, and brought the application to a judge, who signed it. *Id*. The court held that these undisputed facts precluded a finding of malice.

Similarly here, plaintiff was never arrested, the officer brought the application to a judge, who signed it, notwithstanding that the warrant was later declared *nolle prosequi*. On these allegations, plaintiff cannot show the necessary malice. *See also Jackson, supra*, at *7 ("probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing that [an] offense has been committed.") (quoting *Dent v. May Dept. Stores Co.*, 459 A.2d 1042, 1044 (D.C. 1982)).

Notwithstanding that plaintiff was never arrested here, "[t]he issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the 'underlying suit.'" *Pitt v. District of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007) (citing *Joeckel*, 793 A.2d at 1282). Because there was no arrest, there was no "underlying suit," hence plaintiff is precluded from succeeding on his claims.

Essentially, plaintiff asserts that the affidavit sworn out in support of the arrest warrant was "false" because the officer failed to note plaintiff's putative status as a Virginia Special

Conservator of the Peace ("SCOP"), which he claims would have "exempted" him from the requirements of the District's firearm-registration laws. Complaint ¶¶ 20, 33.[12]

But even if plaintiff's claim were legally correct, a doubtful proposition at best, *see infra* pp. 16–19, "[w]hen omissions are involved, the [accused] must show that the affidavit supplemented by those omissions would be insufficient to support a finding of probable cause." *In re A.L.M.*, 631 A.2d 894, 901 (D.C. 1993) (citing *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985)).

For the reasons described below, it appears to be an issue of first impression as to whether Virginia SCOPs are "law enforcement officers" pursuant to the District's law, or even LEOSA. Consequently, even if the disputed affidavit *had* included mention of plaintiff's "status," that fact alone would not be dispositive as to probable cause.

Moreover, a *nolle prosequi* does not necessarily infer the innocence of the accused. *See, e.g., Logan v. Caterpillar, Inc.*, 246 F.3d 912, 926 (7th Cir. 2001) ("[t]he bare use of a *nolle prosequi* order does not establish that the criminal proceedings were terminated in a manner indicative of the plaintiff's innocence."). *See also Duzich v. Advantage Finance Corp.*, 395 F.3d 527 (5th Cir. 2004) (under Texas law, dismissal of a civil action pursuant to a voluntary nonsuit is not an adjudication on the merits); *Nicholas v. Wal-Mart Stores, Inc.*, 33 Fed.Appx. 61 (4th Cir. 2002) (under South Carolina law, plaintiff in malicious prosecution claim bore burden to prove that *nolle prosequi* entered in criminal proceeding was entered under circumstances that implied, or were consistent with, her innocence); *Hill v. City of El Segundo*, 33 Fed.Appx. 254 (9th Cir. 2002) (dismissal of criminal charges "in the interests of justice" was not a favorable termination

---

[12]    Plaintiff's citation is erroneous; the correct cite is D.C. Official Code § 7-2502.01 (2007 Supp.).

for purposes of a malicious prosecution claim); *Donahue v. Gavin*, 280 F.3d 371 (3rd Cir. 2002) (under Pennsylvania law, a *nolle prosequi* is a "favorable termination" only when the criminal charges' final disposition is such as to indicate the innocence of the accused).

No reason was apparently given for the *nolle prosequi* here, and plaintiff has not alleged otherwise. For a termination to be considered "favorable," it should tend to indicate the innocence of the accused. *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986) (citing *Lackner v. LaCroix*, 602 P.2d 393, 394 (Cal. 1979)).

Here, of course, there was no determination of the merits of the prosecution at all, and no indication of the reasons for the *nolle prosequi*. Consequently, notwithstanding that there was never an arrest here, the termination of the previous matter cannot be said to be in favor of the plaintiff. *See id.* at n.2 ("If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.").

Finally, "special injury" has been defined as "arrest, seizure of property, or 'injury which would not necessarily result from suits to recover from like causes of action.'" *Joeckel*, 793 A.2d at 1282 (quoting *Mazanderan v. McGranery*, 490 A.2d 180, 182 (D.C. 1984)).

While plaintiff alleged "special injuries," Complaint ¶ 43, he provided no details beyond those bare words, and thus cannot meet the test as a matter of law, because he was never arrested nor was he deprived of any property, even temporarily.

*5. Plaintiff's Status as a Special Conservator of the Peace is Irrelevant.*

Plaintiff asserts that, because he was appointed as a "Special Conservator of the Peace" in Virginia, he is a "qualified law enforcement officer" under LEOSA, and thus "exempt" from the District's firearms-registration laws. Complaint ¶¶ 15, 33.

Generally, the LEOSA preempts state laws to allow active and retired law-enforcement officers to carry concealed weapons between states. *See* H.R. Rep. 108-560, 2004 U.S.C.C.A.N. 805 (June 22, 2004).

> [T]he term "qualified law enforcement officer" means an *employee of a governmental agency* who—
>
> (1) is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and has statutory powers of arrest;
>
> (2) is authorized by the agency to carry a firearm;
>
> (3) is not the subject of any disciplinary action by the agency;
>
> (4) meets standards, if any, established by the agency which require the employee to regularly qualify in the use of a firearm;
>
> (5) is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and
>
> (6) is not prohibited by Federal law from receiving a firearm.

18 U.S.C. § 926B(c) (emphasis added).

Plaintiff's allegations cannot satisfy the requirements of LEOSA on its face, however, as he is not an "employee of a governmental agency." In fact, plaintiff is the owner of a "Licensed Private Security Services Business" in Virginia. *See* Plaintiff's Exhibit A.[13]

---

[13]    The District also notes that this Exhibit purports to "restrict dissemination" of plaintiff's current residence, date of birth, and Social Security number, *id.* at 1, but the last page of the exhibit reveals that information, in apparent violation of LCvR 5.4(f).

There is very little case law interpreting LEOSA, and plaintiff can cite none that is controlling or even apposite to the instant matter.

However, a number of state attorneys general have issued opinions interpreting LEOSA as does the District here. *See* Plaintiff's Exhibit B at 2 ("'Qualified law enforcement officer' under 18 U.S.C. § 926B includes only those law enforcement officers who are employees of government agencies."). *Cf., e.g.*, Op. Att'y Gen. No. I07-012, 2007 WL 4554462 (Ariz. Dec. 20, 2007) ("qualified law enforcement officer" under LEOSA is, *inter alia*, "an employee of a governmental agency"); Op. Att'y Gen., 2005 WL 3308235 (N.M. July 21, 2005) (under LEOSA, "one of the requirements for a qualified law enforcement officer is that he must be 'authorized by [his] agency to carry a firearm.'"); Op. Att'y Gen. No. 05-026, 2005 WL 1692832 (Va. June 21, 2005) ("local or regional jail officer who is not part of local police or sheriff's department" may be "qualified law enforcement officer" for purposes of LEOSA, if he/she is "an employee of a governmental agency" and meets the other qualifications); Op. Att'y Gen. No. 05-029, 2005 WL 740150 (Tenn. Mar. 21, 2005) (to be a "qualified law enforcement officer," LEOSA "requires employment by a governmental agency.").

Additionally, Congress is considering amending LEOSA, and its actions suggest it reads that law the same as the District. *See* S. 2084, 110th Congress, S.Rep. No. 110-183 (Sept. 21, 2007); H.R. 2726, 110th Congress (June 14, 2007) (seeking to amend 18 U.S.C. § 926B such that "a law enforcement officer of the Amtrak Police Department or a law enforcement or police officer of the executive branch of the Federal Government qualifies as *an employee of a governmental agency* . . . .") (emphasis added).

Moreover, while plaintiff goes back hundreds of years in discussion of the role of Virginia SCOPs, none of that case law is controlling or persuasive, and the powers that plaintiff

ascribes to that office are not nearly as broad as he implies. *See, e.g.,* Op. Att'y Gen. No. 06-005, 2006 WL 788961 (Va. Mar. 22, 2006) ("Regional jail officers are vested only with the limited authority and powers of conservators of the peace."); *Terrell v. Petrie*, 763 F.Supp. 1342, 1347 (E.D.Va. 1991) ("conservators of the peace have limited powers, and are not the equivalent of law enforcement officers.") (citing Virginia Code § 19.2-12); Virginia Code § 19.2-13E (eff. Apr. 2, 2008) ("Court appointments [as SCOPs] shall be limited to the judicial circuit wherein application has been made."). *See also Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999) (even if amusement park's "special police officers," who were Virginia conservators of the peace under the ultimate control of the Sheriff of Hanover County, could be considered "state actors" under § 1983, plaintiff failed to show that "an official policy or custom" was the "moving force" behind plaintiff's arrest and prosecution after being falsely identified as passer of bad checks).

While this discussion may be interesting from an academic point of view, it is ultimately irrelevant for the reasons discussed herein, and the Court need not further consider the issue.

### 6. Plaintiff Cannot Prove Intentional Infliction of Emotional Distress.

To prevail on the tort of intentional infliction of emotional distress in the District of Columbia, a plaintiff must show that the defendant "(1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused him severe emotional distress." *Jackson, supra*, *8 (quoting *Gregg v. Hay-Adams Hotel*, 942 F.Supp. 1, 10 (D.D.C.1996)).

Plaintiff's claim must be dismissed, because he has not alleged the necessary *physical* harm required to support such a claim, alleging only that the District's conduct caused him "severe emotional distress." Complaint ¶ 46. *See Joyce*, 795 F.Supp. at 5 ("Damages may not be

recovered under a claim for emotional distress unless defendants' actions caused plaintiff some physical harm.") (citing, *inter alia, Garber v. United States*, 578 F.2d 414 (D.C. Cir. 1978)).

The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C.1991)).

The District avers that plaintiff cannot make this difficult showing; plaintiff was never arrested or prosecuted. "Nothing in these facts even approaches the requisite standard of 'outrageousness.'" *Jackson, supra*, at *9.


### 7. Plaintiff Cannot Establish Municipal Liability Under 42 U.S.C. § 1983.

To hold the District liable under 42 U.S.C. § 1983, a plaintiff must show that the District implemented or executed a policy or custom that causes the deprivation of plaintiff's constitutional rights. *Monell v. Dept. of Social Svcs*, 436 U.S. 658, 690–91 (1978); *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (*per curiam*). Plaintiff thus has the burden of proving (1) that he was deprived of constitutional rights, and (2) that the deprivation was caused by a policy or custom of the District. *Warren v. District of Columbia*, 353 F.3d 36, 38 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24 (1992)).

Plaintiff cannot prove these two elements; plaintiff has not been deprived of any constitutional right, as demonstrated above.

Plaintiff cannot meet the difficult burden established by case law. Merely invoking § 1983 buzzwords is not sufficient to state a claim. Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed.

*8. Plaintiff Cannot Obtain Punitive Damages.*

The Supreme Court has held that punitive damages may not be awarded against municipalities under § 1983. *City of Newport v. Fact Concerts*, 453 U.S. 247, 267 (1981).

Thus, as a matter of law, plaintiff cannot recover punitive damages against the District here. *Elkins v. District of Columbia,* 527 F.Supp.2d 36, 47 (D.D.C. 2007); *Butera v. District of Columbia*, 235 F.3d 637, 641 (D.C. Cir. 2001) ("We further hold, consistent with recent precedent in this circuit, that the evidence did not amount to the "extraordinary circumstances" necessary to award punitive damages against the District of Columbia."); *Daskalea v. District of Columbia*, 227 F.3d 433, 436 (D.C. Cir. 2000) ("We are unable, however, to uphold the jury's punitive damages award because District of Columbia law bars the imposition of such awards against the District.").

*9. Plaintiff Fails to Meet Any of the Elements Necessary for Emergency Injunctive Relief.*

Notwithstanding the above, in order to obtain emergency injunctive relief, plaintiff must satisfy *each* prong of the following four-part test, by demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) less injury to the non-moving party than the moving party if an injunction is ordered; and (4) that a preliminary injunction is consistent with the public interest. *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (emergency injunctive relief "is an extraordinary remedy that should be granted only when the party seeking

relief, by a clear showing, carries the burden of persuasion.") (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs.*, 158 F.3d at 1318, a particularly weak showing on one factor may be more than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995).

Plaintiff has failed to make a satisfactory showing on *any* of the four factors, hence his demand for emergency injunctive relief should be denied.

### A. Plaintiff Fails to Establish A Substantial Likelihood of Success On the Merits.

For all the reasons stated above, plaintiff's claims must be dismissed, hence plaintiff has no chance of success on the merits.

### B. Plaintiff Has Failed to Establish Irreparable Harm As A Matter of Law.

Plaintiff has failed to make any showing of irreparable harm and therefore his demand for emergency injunctive relief must fail.

An essential prerequisite to injunctive relief is a sufficient showing by plaintiff that he will suffer irreparable harm if the injunctive relief is not granted. *See*, *e.g.*, *Davenport v. International Brotherhood of Teamsters,* 166 F.3d 356, 360 (D.C. Cir. 1999). *See also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974).

The asserted harms must be examined for "substantiality, likelihood of occurrence, and adequacy of proof." *Judicial Watch*, 230 F.Supp.2d at 15 (quoting *Cuomo*, 772 F.2d at 976–77). Plaintiff must also demonstrate that the injuries it claims are "both certain and great." *Cuomo*,

772 F.2d at 976 (quoting *Wisconsin Gas Co. v. FERC*, 244 U.S. App. D.C.349, 758 F.2d 669,

674 (D.C. Cir. 1985)).

At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold

showing of irreparable injury. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747

(D.C. Cir. 1995) ("we require the moving party to demonstrate at least 'some injury . . . .'") (citing,

*inter alia, Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) (preliminary

injunction properly denied "where moving party may have been 'likely to succeed' but did not carry

burden of showing irreparable harm, since 'the basis of injunctive relief in the federal courts has

always been irreparable harm.'") (quoting *Sampson*, 415 U.S. at 88 and *Beacon Theatres, Inc. v.

Westover*, 359 U.S. 500, 506 (1959))).

Plaintiff makes no competent showing of any injury, much less *irreparable* injury.

Consequently, the Court may deny his request for emergency injunctive relief without

considering any other factors. *CityFed*, 58 F.3d at 747. *See also PhRMA v. Walsh*, 538 U.S. 644,

671 (2003) (plaintiff "cannot obtain a preliminary injunction simply by showing minimal or

quite 'modest' harm") (*Breyer, J., concurring*).

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), sets forth the guiding

principles for determining whether irreparable harm exists: (1) the injury must be both *certain* and

*great*, not something merely feared as likely to occur at some indefinite time; (2) the injury must be

of such imminence that there is a "clear and present" need for relief to prevent it; and (3) economic

loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened.

*See also Sampson*, 415 U.S. at 88–90.

All of the threatened harms alleged by plaintiff are entirely speculative, as shown above

in the discussion of standing. Plaintiff did not even provide the usual self-serving and conclusory

declarations. *See, e.g.*, *Nat'l Assn. of Psychiatric Health Sys. v. Shalala*, 120 F.Supp.2d 33, 44 & n.9 (D.D.C. 2000) (preliminary injunction denied where plaintiffs "offer[ed] no concrete, reliable evidence to support their contentions of irreparable harm.").

To the extent plaintiff claims his constitutional rights are now (or will be) violated, he has similarly failed to meet his burden. *See, e.g., Wagner v. Taylor*, 836 F.2d 566, 577 n. 76 (D.C.Cir.1987) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, . . . the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant."); *Veitch v. Danzig*, 135 F.Supp.2d 32, 37 (D.D.C. 2001) (violation of constitutional rights is not itself an irreparable harm) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C. 1976) ("[T]he required showing of irreparable injury is not eliminated simply by virtue of a claim alleging violation of statutory or constitutional rights."), *aff'd*, 548 F.2d 977 (D.C.Cir.1976).

Imminent violation of constitutional rights—even if proven—does not, by itself, constitute irreparable injury. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006) (holding that, "in this court, as in several others, there is no *per se* rule that a violation of freedom of expression *automatically* constitutes irreparable harm.") (emphasis in original).

There is nothing remotely "imminent" here in the broad sense of the word; nothing will occur in the immediate future requiring *emergency* injunctive relief. *See National Association of Manufacturers v. Taylor*, 2008 WL 1776997, *5 (D.D.C. Apr. 18, 2008) ("Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur. The movant must provide proof . . . indicating that the harm is certain to occur in the near future.") (quoting *Wisconsin Gas*) (emphasis in original). *See also, e.g., Al Odah v. United*

*States*, 406 F.Supp.2d 37, 41 (D.D.C. 2005) (the alleged harm must "be actual and not theoretical" and "'of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'") (citations omitted).

Plaintiff fails to make any showing of irreparable harm and therefore his request for a preliminary injunction must fail.

### C. The Balance of Equities Favors Denying Injunctive Relief.

Plaintiff here seeks to enjoin enforcement of laws of substantial local importance, and to require a pre-determined outcome for his potential constitutional and federal arguments raised as defenses in any future prosecution. The balance of equities tips decidedly in favor of defendants where plaintiff essentially is asking this Court to issue a mandatory injunction now, where no prosecution is imminent, notwithstanding the issues of comity that would mandate that local courts confront the issues first. In other words, plaintiff seeks the ultimate relief at the beginning of the litigation.

An injunction would substantially injure the District of Columbia and its citizens. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). *See also Greene*, 806 A.2d at 223 (quoting *New Motor Vehicle Bd.*).

In these circumstances, the District of Columbia enjoys the balance of the equities in its favor.

<u>D. The Public Interest Favors the District.</u>

It is plaintiff's self-interest, not the public interest, which is at the root of the Complaint. The public interest favors denying plaintiff's request for a preliminary injunction.

If and when plaintiff is arrested or prosecuted, he may properly raise his arguments in the local courts.

### III. <u>Conclusion</u>

For the foregoing reasons, the defendant moves to dismiss the Complaint. A proposed Order is attached hereto.

DATE: May 7, 2008                Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

<u>        /s/ Ellen A. Efros        </u>
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431

<u>        /s/ Andrew J. Saindon        </u>
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
ROBERT L. ORD,                              )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )        Civil Action No.08-00704 (JDB)
                                            )
DISTRICT OF COLUMBIA,                       )
                                            )
                    Defendant.              )
_____)

ORDER

Upon consideration of the Defendants' Motion To Dismiss, the Memorandum of Points

and Authorities in Support thereof and in opposition thereto, the entire record herein, and it

appearing that the relief should be granted, it is hereby:

ORDERED, that the Defendants' Motion To Dismiss be, and hereby is, GRANTED, and

it is

FURTHER ORDERED, that the Complaint is hereby DISMISSED with prejudice, for

failure to state a claim upon which relief may be granted, and it is

FURTHER ORDERED, that the Motion for Preliminary Injunction is hereby DENIED as

MOOT.

SO ORDERED.


DATE: _____            _____
                                      JOHN D. BATES
                                      United States District Judge