# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT L. ORD,

      Plaintiff,

      v.

DISTRICT OF COLUMBIA,

      Defendant.

Civil Action No. 08-704 (JDB)

## MEMORANDUM OPINION

Plaintiff Robert L. Ord brings this action against the District of Columbia alleging deprivation of a liberty interest in violation of the Fourth Amendment, malicious prosecution, and intentional infliction of emotional distress. Currently before the Court is Ord's motion for a preliminary injunction seeking to restrain the District, its officers, agents, servants, employees and/or attorneys from prosecuting or arresting him for alleged violations of the District of Columbia's firearms statutes. In response, the District has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that Ord lacks standing, that his claims are unripe, and that he has failed to state a claim upon which relief can be granted. Upon careful consideration of the motions, the parties' memoranda, the applicable law, and the entire record, and for the reasons set forth below, the Court will grant the District's motion to dismiss and will deny Ord's motion for a preliminary injunction.

## BACKGROUND

Ord started a private security business, Falken Industries, in 2003. See Stmt. of Robert Ord (Docket No. 9) ¶ 5. On June 8, 2007, he was appointed by the Virginia Circuit Court of

Orange County as a Special Conservator of the Peace. See Compl. ¶ 12 (citing Pl.'s Ex. A). The appointment order states that Ord "is authorized to carry firearms while acting within the course and scope of his employment and appointment as a Special Conservator of the Peace, so long as firearms certification is maintained." Pl.'s Ex. A at 4. The appointment order also states that Ord is designated as a "Qualified Law Enforcement Officer" pursuant to the Law Enforcement Officers Safety Act of 2004, 18 U.S.C. § 926B. See id.

On February 2, 2008, the Metropolitan Police Department ("MPD") issued a memorandum to all Metropolitan Police Department Reserve Corps Members. See Compl. ¶ 18. Ord attaches a copy of this memorandum to the complaint, although Ord does not claim to be an MPD Reserve Corps Member. See Pl.'s Ex. B. The memorandum warns MPD Reserve Corps Members who also serve as Special Conservators of the Peace that they have "no authority to carry a firearm in the District of Columbia" unless they are qualified law enforcement officers under the Law Enforcement Officers Safety Act of 2004. Id. at 1. The MPD memorandum further states that regardless of what the Virginia Circuit Court's Order of Appointment represented, a qualified law enforcement officer "includes only those law enforcement officers who are employees of government agencies." Id. For those individuals who carry firearms in the District of Columbia while not properly covered under 18 U.S.C. § 926B, then, the memorandum warns that they will be "subject to all relevant criminal penalties." Id.

On April 17, 2008, MPD Detective Kimberly Marshall made an application for an arrest warrant against Ord, alleging that Ord had possessed unregistered firearms and ammunition on or about April 4, 2008, in violation of D.C. Code § 7-2502.01. See Compl. ¶ 19. Ord learned of the arrest warrant on April 21, 2008. See Stmt. of Robert Ord ¶ 21. The next day, Ord's attorney

-2-

provided evidence to the District of Ord's status as a Special Conservator of the Peace, and the Office of the Attorney General indicated it would "not go forward with this warrant." Compl. ¶¶ 24, 26.  Ord's counsel thereafter moved the Superior Court to dismiss the Information and quash the warrant, and on April 24, 2008, the Office of the Attorney General declared a nolle prosequi of the Information in support of the warrant.  See Compl. ¶¶ 28-29.  Ord was therefore never arrested or taken into custody.  In Ord's own words, he "does not claim that the Defendant or its agents physically seized his person or property, or that he was subjected to post-arraignment limitations on his freedom."  Pl.'s Opp'n at 10.

On the same day that the warrant was nullified, however, Ord filed his complaint in this Court alleging deprivation of a liberty interest pursuant to 42 U.S.C. § 1983 and common law claims of malicious prosecution and intentional infliction of emotional distress pursuant to District of Columbia law.  In addition to compensatory and punitive damages, Ord seeks a declaration that he is exempt from certain District of Columbia firearms regulations, and he asks this Court to enjoin the District from prosecuting or enforcing these laws against him.

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer, 416 U.S. at  236; Sparrow v. United Air Lines, Inc., 216 F.3d

1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

## DISCUSSION

### I. Ord's Federal Law Claim

Because Ord has not been arrested and prosecuted, Ord's "case constitutes a 'preenforcement' challenge." Seegars v. Gonzales, 396 F.3d 1248, 1251 (D.C. Cir. 2005).

Preenforcement challenges often encounter particular problems of justiciability because the authority of the judiciary is limited by Article III of the Constitution to the "resolution of 'cases' and 'controversies.'" Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). A matter may be rendered nonjusticiable for a variety of reasons, frequently blending constitutional and prudential considerations. See Flast v. Cohen, 392 U.S. 83, 95 (1968) ("no justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action"). Here, the District argues that the absence of a ripe claim and standing deprives this Court of jurisdiction to grant the relief Ord requests.

"Ripeness analysis tests whether a question has sufficiently matured to be amenable to adjudication." Flynt v. Rumsfeld, 355 F.3d 697, 702 (D.C. Cir. 2004); see also Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997) ("A related component of justiciability which is particularly relevant in the context of actions for preenforcement review of statutes is 'ripeness,' which focuses on the timing of the action rather than on the parties seeking to bring it."). Under the two-pronged test for ripeness, "[a] court is to evaluate 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Nevada v. Dep't of Energy, 457 F.3d 78, 84 (D.C. Cir. 2006) (quoting Abbott Labs. v. Gardner, 387 U.S. 136 (1967)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. at 85 (quoting Texas v. United States, 523 U.S. 296, 300 (1998)) (internal quotation marks and citation omitted). A credible and imminent threat of prosecution, however, "can simultaneously ripen a preenforcement challenge and give the threatened party standing." Navegar, Inc., 103 F.3d at

998.

The standing inquiry asks "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498 (1975) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). Standing is a requirement, therefore, that every litigant in a federal lawsuit must satisfy. It is a burden borne by the plaintiff and each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). At a minimum, a plaintiff must establish three elements: (1) that he "suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical' . . . ," (2) "there must be a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 560 (citations and quotations omitted).

Here, the District makes much ado about the fact that the Office of the Attorney General declared a nolle prosequi of the Information in support of the warrant, and the District therefore argues that Ord cannot show a credible and imminent threat of prosecution sufficient to ripen his claim and provide standing. Under D.C. Circuit law, "[t]he question of whether a threat of prosecution adequate to satisfy the requirements of justiciability is present in any particular preenforcement challenge is a factual and case-specific one." Navegar, Inc., 103 F.3d at 999. Relying on Navegar, Seegars, and Parker v. Dist. of Columbia, 478 F.3d 370 (D.C. Cir. 2007),

-6-

aff'd sub nom. Dist. of Columbia v. Heller, 128 S. Ct. 2783 (2008), the District contends that Ord cannot demonstrate that his federal claim is justiciable.

In Navegar, firearms manufacturers challenged the constitutionality of certain provisions of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796. See 103 F.3d at 996. The Act made it unlawful for a person to "manufacture, transfer, or possess a semiautomatic assault weapon." Id. at 997 (quoting 18 U.S.C. § 922(v)(1) (1994)). The Act further defined "semiautomatic assault weapon" to include specific models that only the plaintiffs made and other weapons with certain features that were made by several different manufacturers. Id. When the Act became law, agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") visited the plaintiffs' facilities, alerted them of the new prohibitions, conducted inventories of plaintiffs' weapons, and sent a letter summarizing the Act's prohibitions. Id. The plaintiffs thereafter stopped manufacturing and transferring the weapons that were prohibited under the Act. Id.

In evaluating ripeness and standing, the D.C. Circuit concluded that the plaintiffs' claims were justiciable where they were challenging the provisions of the Act that specifically prohibited their products by name. Id. at 1001. The court noted that the most important element of the analysis was that "the Act in effect singles out the appellants as its intended targets, by prohibiting weapons that only the appellants make." Id. at 1000. Combined with the agents' visits to the manufacturers' facilities, the inventories that were conducted, and the letter that was sent, the specific targeting of plaintiffs' products led to a credible threat of prosecution that was sufficient to satisfy the ripeness and standing doctrines. Id.

The court, however, found no such genuine and imminent threat of prosecution to support

plaintiffs' claims challenging provisions of the Act that referred to weapons with certain features as opposed to particular brands and models.  Id. at 1001.  Although plaintiffs could still show "the high-profile nature of their business and the publicity accorded to the Act, the visits by the ATF agents, and the letter from the ATF," id., they could not show that they were specifically targeted for prosecution regarding these provisions.  These provisions could be enforced against a number of manufacturers, and the plaintiffs only demonstrated the government's general interest in enforcing them.  Id.  Because there was no special priority placed upon enforcing these provisions against the plaintiffs, they did not have a sufficient injury to establish standing for the rest of their claims.

Applying Navegar, the D.C. Circuit also concluded that the plaintiffs' claims were not justiciable in Seegars.  There, the plaintiffs challenged the constitutionality of provisions of the District of Columbia's criminal code that barred them from registering and lawfully possessing pistols or maintaining firearms in their homes in a loaded and assembled manner.  See 396 F.3d at 1250.  The plaintiffs alleged that they lived in high-crime neighborhoods and would like to possess loaded weapons for protection.  They went without the additional security of possessing a weapon ready for immediate use, however, due to the alleged threat of criminal prosecution. Id. at 1251.  To demonstrate the threat of prosecution, the plaintiffs cited the District's "position in prior litigation, declaring that it enforces its gun laws, prosecuting 'all violators of the statute under normal prosecutorial standards.'"  Id. at 1255 (quoting Austin v. United States, 847 A.2d 391, 393-94 (D.C. 2004)).  Because the plaintiffs could not show that they were specifically targeted, however, the plaintiffs did not demonstrate "a threat of prosecution reaching the level of imminence required by Navegar."  Id.

Lastly, in Parker, the D.C. Circuit followed Navegar and Seegars and stated that it was "obliged to look for an allegation that appellants here have been singled out or uniquely targeted by the D.C. government for prosecution." See 478 F.3d at 375. The plaintiffs were again challenging the District of Columbia's gun-control statutes, and most of the plaintiffs argued that actual and specific threats of prosecution were made against them by the District during the district court litigation. Id. at 373, 375. The court, however, found the District's comments to be nothing more than a general threat to prosecute violations of its gun-control statutes, without any special priority applied to the plaintiffs. Id. For these plaintiffs, then, the court determined that they had no sufficient injury to constitute standing. Only for one plaintiff did the court conclude that standing existed.

Like most of the plaintiffs described above, the District argues that Ord cannot demonstrate a credible and imminent threat of prosecution. In response, Ord raises two arguments in an attempt to distinguish his case from Navegar, Seegars, and Parker. First, Ord argues that the District "has applied for and received a warrant" for his arrest. Pl.'s Opp'n at 4. At first glance, this argument appears attractive and seems to establish that the threat of prosecution against Ord is not "imaginary or speculative." Steffel v. Thompson, 415 U.S. 452, 459 (1974) (citation omitted) (determining that the petitioner would have standing based upon several threats of arrest directed at him and in light of his companion's prosecution, as long as circumstances had not changed to affect the continuing existence of a live controversy). However, Ord fails to explain that the Office of the Attorney General declared a nolle prosequi of the Information in support of the warrant on April 24, 2008. The warrant is therefore no longer in effect, and Ord does not demonstrate that the District has any intention of further pursuing him

for alleged violations of the disputed provisions.[1]  Indeed, the affirmative step by the District to nullify the warrant is strong evidence that the District does not presently intend to prosecute Ord. The nullified warrant therefore does not demonstrate "a threat of prosecution reaching the level of imminence required by Navegar."  Seegars, 396 F.3d at 1255.

Second, Ord alleges fear of future arrest and prosecution based upon the MPD memorandum.  Notably, however, this memorandum was not sent to him and does not include him as a member of its general audience.  The memorandum applies to members of the MPD Reserve Corps who also serve as Special Conservators of the Peace.  It makes perfect sense that the District might approach the issue differently with its employees than it would with Ord and others.  And in any event, the memorandum generally expresses only that those individuals who are not in compliance with the District of Columbia's firearms statutes "will be subject to all relevant criminal penalties."  Pl.'s Ex. B at 1.  This general recognition of, or even intention to enforce, the District's firearms laws does not establish that Ord was specifically targeted with a threat of prosecution that is credible and imminent.  Navegar, 103 F.3d at 999.

Hence, Ord's current fear of future arrest and prosecution is mere conjecture that is insufficient to support an injury in fact for purposes of Article III standing.  Ord's alleged claim is dependent upon "contingent future events" that may never occur.  Flynt, 355 F.3d at 702 (quoting

---

[1]Plainly, Ord cannot rely on the mere issuance of the warrant, which was nullified and never executed, to satisfy Article III's injury-in-fact requirement for his deprivation of liberty claim.  As the District points out, under such a theory, "every single flawed draft of an application for a search or arrest warrant would be actionable."  Def.'s Reply at 1.  Instead, the "execution of the warrant and custody under that warrant [are] the operative event[s] triggering any loss of liberty."  Willis-Bey v. D.C. Dep't of Corrs., 2007 WL 1847853, at *3 (D.D.C. June 27, 2007) (quoting Moody v. Daggett, 429 U.S. 78, 87 (1976)).  As Ord concedes, those triggering events never occurred here.  Pl.'s Opp'n at 10.

Texas v. United States, 523 U.S. 296, 300 (1998)).  Merely anticipating the possibility of a future

arrest and prosecution, Ord appears to be seeking an advisory opinion from this Court on the

merits of his potential defenses.  But "[c]ourts do not function to provide advisory opinions

ungrounded in the rights of an injured party."  Flynt v. LFP, Inc., 245 F. Supp. 2d 94, 102

(D.D.C. 2003), aff'd on other grounds by Flynt v. Rumsfeld, 355 F.3d 697, 702 (D.C. Cir. 2004).

Thus, due to the absence of standing and ripeness, the Court will dismiss Ord's claim under 42

U.S.C. § 1983.

The Court will also therefore deny Ord's request for a preliminary injunction restraining

the District, its officers, agents, servants, employees and/or attorneys from prosecuting or

arresting him for alleged violations of the District of Columbia's firearms statutes.  "[P]rudence

dictates that the Court refrain from exercising its power to grant injunctive relief as much as it

does with respect to declaratory relief until a genuine case or controversy is presented 'of

sufficient immediacy and reality.'"  Flynt v. LFP, Inc., 245 F. Supp. 2d at 110 (quoting Getty

Images News Servs. Corp. v. Dep't of Def., 193 F. Supp. 2d 112, 117 n.7 (D.D.C. 2002)).

## II.    Ord's Local Law Claims

Ord's only remaining claims, therefore, are the common law claims of malicious

prosecution and intentional infliction of emotional distress brought under District of Columbia

law.  When Ord filed his complaint, he premised this Court's jurisdiction on 28 U.S.C. § 1331 for

his federal law claim and argued that the Court had supplemental jurisdiction over the common

law claims pursuant to 28 U.S.C. § 1367.  Now that Ord's federal claim has been dismissed, the

District argues that "the Court may properly decline to exercise supplemental jurisdiction over

any remaining local-law claims."  Def.'s Reply at 3.

-11-

The supplemental jurisdiction statute provides that a district court may decline to exercise jurisdiction over related non-federal claims if "the district court has dismissed all claims over which it had original jurisdiction."  28 U.S.C. § 1367(c)(3); see Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed.").  The exercise of supplemental jurisdiction remains discretionary on the part of a federal court, but "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state law claims."  Shekoyan, 409 F.3d at 424 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

That is the case here.  Because there has been no discovery in this case and the investment of judicial resources has been minimal, the Court concludes that the dismissal of Ord's common law claims is warranted.  See Mitchell v. Yates, 402 F. Supp. 2d 222, 235 (D.D.C. 2005) (determining that plaintiff's state law claims should be dismissed "based on considerations of efficiency and the relative expertise of the local courts on matters of local law").  Moreover, Ord's claims mainly rest on the interpretation of District of Columbia law.  Hence, the local District of Columbia court is "a convenient and appropriate alternative forum" that is available to hear Ord's suit.  Republic Prop. Trust v. Republic Props. Corp., 540 F. Supp. 2d 144, 164 (D.D.C. 2008).

**CONCLUSION**

For the foregoing reasons, the Court will grant the District's motion to dismiss and will deny Ord's motion for a preliminary injunction.  A separate order accompanies this memorandum opinion.

_____
/s/
JOHN D. BATES
United States District Judge

Dated:  August 29, 2008